UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| KAREN RATHBURN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:25 CV 1031 |
| | ) | |
| FOREST RIVER, INC., and | ) | |
| INTERNATIONAL MOTORS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION and ORDER

This matter is before the court on defendants' motion to dismiss under Federal

Rule of Civil Procedure 12(b)(6). (DE # 13.) For the reasons that follow, the motion is

granted in part and denied in part.

## I.    BACKGROUND [1]

Plaintiff purchased a recreational vehicle from RCD RV Supercenter ("RCD").

(Compl. ¶ 14.) The completed motor home, including the living quarters, was

manufactured by Forest River, Inc. ("Forest River"). (*Id.* ¶ 1.) International Motors, LLC

("International") manufactured the chassis, which it supplied to Forest River, and it

issued a limited warranty covering that chassis. (*Id.* ¶¶ 1, 8, 9.) Plaintiff alleges that she

relied on the existence of International's warranty when she purchased the vehicle. (*Id.*

¶¶ 16–17.)

---

[1] The following facts are drawn from plaintiff's complaint and are accepted as true for present purposes. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018).

1

After the purchase, the motor home began exhibiting a defect that causes the engine warning light to illuminate and the vehicle to enter "limp mode" while being driven. (*Id.* ¶¶ 19, 20, 28–30, 70.) Plaintiff presented the vehicle for warranty repair on three occasions – once in Indiana and twice in Ohio – at facilities she alleges were authorized to perform warranty work on International's behalf. (*Id.* ¶¶ 4, 5, 15, 28–30.) She alleges that the defect was never repaired and continues to exist. (*Id.* ¶¶ 31, 44, 70.)

Plaintiff alleges breach of express warranty, breach of implied warranty, and breach of "contract of warranty" against both defendants under Indiana and/or Ohio law. She also asserts a cause of action under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.* Finally, she alleges that International, alone, violated Ohio's Lemon Law, Ohio Rev. Code §§ 4517.01(Q); 1345.71(B). International now moves to dismiss each claim asserted against it. (DE # 13.)

## II.     LEGAL STANDARD

Rule 12(b)(6) requires the dismissal of allegations that fail to state a claim upon which relief can be granted. A court reviewing a complaint pursuant to Rule 12(b)(6) must construe the allegations in the complaint in the light most favorable to the non-moving party, accept all well-pleaded facts as true, and draw all reasonable inferences in favor of the non-movant. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018).

Whether allegations state a claim is a question typically governed by the liberal notice-pleading requirements of Rule 8, which requires that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to

2

relief." Fed. R. Civ. P. 8(a)(2). This standard does not demand "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.") (internal quotation marks and citation omitted). A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.    DISCUSSION

The court begins with choice of law, because the answer supplies the substantive rules governing every claim that follows. The court then addresses the Ohio Lemon Law claim, the express warranty claim brought through the MMWA, the breach of contract claim, and the implied warranty claim.

### A.    Choice of Law

Plaintiff first suggests that the court need not resolve the question at the pleading stage because her complaint states a claim under the law of either state. The court disagrees, at least as to the implied warranty claim, where the two states' rules point in opposite directions. Courts in this district routinely conduct a choice-of-law analysis on a motion to dismiss when differing privity requirements are at issue. *See, e.g., Shearer v. Thor Motor Coach, Inc.*, 470 F. Supp. 3d 874, 884 (N.D. Ind. 2020).

A federal court exercising jurisdiction over state law claims applies state substantive law and federal procedural law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79

(1938); *Felder v. Casey*, 487 U.S. 131, 151 (1988). Substantive law for this purpose includes the forum state's conflict-of-laws rules; the court does not automatically apply the law of the forum, but rather applies the forum's choice-of-law rules to determine which state's substantive law controls. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Because this court sits in Indiana, Indiana's choice-of-law rules apply.

Indiana's choice-of-law rules require, as a threshold matter, a conflict between the candidate states' laws that is "important enough to affect the outcome of the litigation." *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004); *see also Stonington Ins. Co. v. Williams*, 922 N.E.2d 660, 665 (Ind. Ct. App. 2010). Both parties identify such a conflict, and the court agrees that at least one exists: Indiana does not require vertical privity for a claim of breach of the implied warranty of merchantability against a remote manufacturer, *Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 959 (Ind. 2005), while Ohio does, *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1147 (Ohio 2007). That difference is plainly outcome-determinative for International, a component supplier who is several links removed from plaintiff.

Plaintiff's claims sound in contract. She alleges economic loss arising from commercial dealings, not personal injury. *See Hitachi Constr. Mach. Co. v. AMAX Coal Co.*, 737 N.E.2d 460, 465 (Ind. Ct. App. 2000); *Eby v. York-Div., Borg-Warner*, 455 N.E.2d 623, 626 (Ind. Ct. App. 1983). Where, as here, the contract selects no governing law, Indiana applies the law of the state bearing the most intimate contacts with the dispute, considering the place of contracting, the place of negotiation, the place of performance,

4

the location of the contract's subject matter, and the domicile, residence, place of incorporation, and place of business of the parties. *Nautilus Ins. Co. v. Reuter*, 537 F.3d 733, 737 (7th Cir. 2008); *Nat'l Union Fire Ins. Co. v. Std. Fusee Corp.*, 940 N.E.2d 810, 814 (Ind. 2010); *RAM Prods. Co. v. Chauncey*, 967 F. Supp. 1071, 1080–81 (N.D. Ind. 1997) (applying Restatement (Second) of Conflict of Laws § 188).

Those contacts favor Ohio. The vehicle was purchased in Ohio from an Ohio dealer, and any negotiations concerning the sale occurred there. Delivery occurred in Ohio. The subject matter of the warranty, the motor home itself, is in Ohio. Neither party is domiciled in Indiana; International is an Illinois entity. The sole Indiana connection to this case identified by either side is that one of the three repair visits occurred at a facility in that state. That is not enough to displace Ohio.

Because Indiana choice-of-law rules treat each independent claim separately but do not permit issues within a claim to be parsed out for separate treatment, *Ky. Nat. Ins. Co. v. Empire Fire & Marine Ins. Co.*, 919 N.E.2d 565, 575–76 (Ind. Ct. App. 2010); *Simon*, 805 N.E.2d at 805, Ohio law governs the warranty claims and the derivative questions of agency and third-party beneficiary status embedded within them. *See Costanzo v. Nationwide Mut. Ins. Co.*, 832 N.E.2d 71, 76 (Ohio Ct. App. 2005).

### B.    Plaintiff's Ohio Lemon Law Claim

Ohio's Lemon Law imposes obligations on a "manufacturer," defined as a "person who manufactures, assembles, or imports motor vehicles, including motor homes, but does not mean a person who only assembles or installs the body, special equipment unit, finishing trim, or accessories on a motor vehicle chassis supplied by a

manufacturer or distributor." Ohio Rev. Code § 4517.01(Q); *see* Ohio Rev. Code § 1345.71(B). International argues that it falls outside the definition of a manufacturer because it built only a component – the chassis – and did not manufacture, assemble, or import the finished motor home. The court agrees.

The decisions construing this language uniformly hold that the Ohio Lemon Law reaches the final manufacturer of the finished vehicle, not the makers of the components incorporated into it. In *Temple v. Fleetwood Enterprises, Inc.*, the Sixth Circuit held that the Ohio Lemon Law "creates liability for a single entity, namely the final manufacturer of a finished motor home." 133 F. App'x 254, 264–65 (6th Cir. 2005). The *Temple* court held that the manufacturer of the engine did not fit any of the statutory descriptions. *Id.* A similar conclusion was reached by the court in *Rothermel v. Safari Motor Coaches, Inc.*, No. 93-7229, 1994 WL 1029332, at *3 (N.D. Ohio July 29, 1994), as to a chassis manufacturer. In *Rothermel*, the court reasoned that statutory remedies – replacement of the vehicle or refund of the purchase price – can sensibly be imposed only on the entity that received the purchase price and can restore the consumer to her presale position. *Id.* The court there also observed that the final manufacturer is not left without recourse; it may pursue traditional warranty or indemnity claims against its suppliers. *Id.; Conrad v. Winnebago Industries, Inc.*, No. 2:06-CV-953, 2008 WL 1696950, at *6–7 (S.D. Ohio Apr. 9, 2008) (holding the same).

Plaintiff's principal authority is *Dillow v. Mallard Coach Co.*, 615 N.E.2d 1076 (Ohio Ct. App. 1992), which she reads as holding that a chassis manufacturer may be liable under the Ohio Lemon Law for defects in the chassis it built. But in *Sirlouis v. Four*

6

*Winds International Corp.,* 2012 WL 1068709, at *14 (N.D. Ohio Mar. 29, 2012), the court explained that a chassis manufacturer could be liable as a "manufacturer" under the Ohio Lemon Law only in the context of a suit by the entity who purchased the chassis itself – usually the final manufacturer, not the consumer. As *Sirlouis* aptly explains, *Dillow* "does not address the propriety of a Lemon Law claim by a consumer against a component manufacturer." *Id.* at *14. Confronted with the same posture here – a consumer suing the manufacturer of an RV chassis – this court agrees with the reasoning of *Sirlouis* and concludes that International "does not fit the description of 'manufacturer,' since it did not manufacture, assemble, or import the RV." *Id.*

Plaintiff's remaining arguments do not change the analysis. She points out that the statutory definition's exclusionary clause refers to "a motor vehicle chassis supplied by a manufacturer or distributor," and contends that this phrase itself acknowledges the chassis supplier to be a manufacturer. The clause, however, describes the source of the chassis in order to identify who is being excluded; it does not affirmatively confer liability under Section 1345.72 on an entity that did not manufacture, assemble, or import the motor vehicle. Nor does the exclusion assist plaintiff on these allegations, because Forest River is not alleged to have "only" installed a body. Plaintiff explicitly alleges that Forest River manufactured the completed motor home. (Compl. ¶ 1.)

Plaintiff also notes that *Temple* and *Rothermel* were decided at summary judgment, whereas this case is still at the pleadings stage. But the construction of a statute like Ohio's Lemon Law is a question of law, *Yommer v. Outdoor Ent., Inc.,* 711 N.E.2d 296, 297 (Ohio Ct. App. 1998), and the question does not become more or less

answerable depending on the procedural posture. As a legal matter, International is not a statutory "manufacturer," and plaintiff's claim against it under the Ohio Lemon Law will be dismissed.

### C.     Plaintiff's Express Warranty Claim Under the MMWA

The MMWA permits a consumer to bring a federal cause of action for breach of an express warranty, borrowing the underlying state law cause of action. *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 956 (7th Cir. 1998); *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004). Before an obligation to replace or refund arises, the warrantor must be afforded a reasonable number of opportunities to repair the defect. 15 U.S.C. § 2304(a)(4). The MMWA does not define what number is reasonable.

Neither Indiana's nor Ohio's lemon law supplies a benchmark here. Indiana's statute expressly excludes motor homes. Ind. Code § 24-5-13-5. Ohio's does not apply to International for the reasons just explained. The parties agree, therefore, that the question is governed by general principles of reasonableness. International asks the court to hold that four repair attempts are required as a matter of law, relying on *General Motors Corp. v. Sheets*, 818 N.E.2d 49, 53 (Ind. Ct. App. 2004), and *Mayew v. Chrysler, LLC*, No. 07C–10–044 PLA, 2008 WL 4447707, at *4 (Del. Super. Ct. 2008). Neither case is persuasive. *Mayew* construes the Delaware Warranty Act, and *Sheets* describes the four-attempt presumption written into Indiana's Lemon Law – the very statute that excludes this vehicle type entirely. Neither announces a general rule that fewer than four attempts is unreasonable as a matter of law.

International's reply shifts ground somewhat, pointing to the eight-visit presumption in Ohio Rev. Code § 1345.73(3). But a statutory presumption that eight attempts *are* reasonable does not establish that three attempts *cannot* be, and the presumption appears in a state statute that the court has just held inapplicable to International. Plaintiff, on the other hand, reads *Temple* to set the floor at two repair attempts. 133 F. App'x at 268. Whatever the minimum, the reasonableness of the number of repair opportunities afforded is ordinarily a fact-bound question, and it cannot be resolved against plaintiff on the pleadings on this record.

International also argues that plaintiff failed to allege that the defects remained uncorrected after the three visits. That is not so. The complaint alleges that the engine light continues to illuminate, that the vehicle continues to enter limp mode, and that the defect "was never repaired and continues to exist." (Compl. ¶¶ 28–31, 44, 70.) Taking those allegations as true and drawing reasonable inferences in plaintiff's favor, she has plausibly alleged that International was given a reasonable opportunity to cure and failed. The motion to dismiss is denied as to the express warranty claim and the MMWA claim predicated on it.

### D.    Plaintiff's Breach of Contract Claim

International next argues that plaintiff's breach of contract claim is nothing more than her warranty claim wearing a different label. Under Ohio law, breach of contract and breach of warranty claims are duplicative where they rest on the same operative facts and allege the same breach. In *Booth v. Duffy Homes, Inc.*, the Ohio Court of Appeals held that "the breach of warranty and breach of contract claims are essentially

9

a single claim" where the contract claim "merely alleged that, by breaching its warranty, [the defendant] breached its purchase contract." No. 07AP–680, 2008 WL 4517808, at *2 n.2 (Ohio Ct. App. Oct. 9, 2008); *see also Cont'l Cas. Co. v. Vertiv Servs., Inc.*, No. 2:20-cv-4880, 2023 WL 5754082, at *5 (S.D. Ohio Sept. 6, 2023) (dismissing breach of contract claim that was "merely a re-packaging" of the breach of warranty claim); *Litsinger v. Forest River, Inc.*, 536 F. Supp. 3d 334, 359 (N.D. Ind. 2021) (a warranty claim repackaged as a contract claim cannot be sustained under Ohio law).

The same logic applies to this case. Plaintiff's contract theory is that International's limited warranty was a contract, that the chassis was defective, and that International failed to repair it. (Compl. ¶¶ 10, 16–17, 46.) She identifies no contractual obligation owed to her by International independent of the warranty, and no breach distinct from the alleged failure to honor it. The authorities plaintiff cites do not save the claim. She cites numerous cases that apply Indiana law, which does not apply here. *E.g., Bloomer v. Thor Motor Coach Inc.*, 741 F. Supp. 3d 791, 802–03 (N.D. Ind. 2024); *Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.*, 134 N.E.3d 370, 379 (Ind. 2019); *Perry v. Gulf Stream Coach, Inc.*, 814 N.E.2d 634, 643 (Ind. Ct. App. 2004); *Zawistoski v. Gene B. Glick Co.*, 727 N.E.2d 790, 792 (Ind. Ct. App. 2000). Her Ohio cases do not help either. In *Chemtrol Adhesives, Inc. v. American Manufacturers Mutual Insurance Co.*, 537 N.E.2d 624 (Ohio Ct. App. 1989), the court discusses the contractual origins of warranty obligations but does not address whether duplicative claims may proceed side by side. As for *Nordberg, Inc. v. Sylvester Material Co.*, 654 N.E.2d 1358 (Ohio Ct. App. 1995), that case involved a seller that sold machinery directly to the plaintiff under a sales contract with

10

warranty terms embedded in it – a direct contractual relationship of a kind plaintiff does not have with International. Put simply, plaintiff has made no arguments that can save the breach of contract claim from dismissal.

### E. Plaintiff's Implied Warranty Claim

Ohio law requires privity of contract to sustain a contract-based implied warranty claim. *Curl*, 871 N.E.2d at 1147; *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Enters.*, 50 N.E.3d 955, 962 (Ohio Ct. App. 2015). A manufacturer's warranty running to a consumer is collateral to the retail sales contract and does not itself supply the privity the Uniform Commercial Code contemplates. *Haynes v. George Ballas Buick-GMC Truck*, No. 89AP-1559, 1990 WL 210413, at *6 (Ohio Ct. App. Dec. 21, 1990). Vertical privity "exists only between immediate links in the distribution chain." *Curl*, 871 N.E.2d at 1148. Plaintiff bought the motor home from RCD; International sold a chassis to Forest River. (Compl. ¶¶ 8, 9, 14.) International and plaintiff are not immediate links, so no direct privity exists.

Ohio recognizes two exceptions: where an agency relationship exists between the manufacturer and the dealer, and where the consumer is an intended third-party beneficiary of the contract between them. *Bobb Forest Prods., Inc. v. Morbark Indus., Inc.*, 783 N.E.2d 560, 576 (Ohio Ct. App. 2002); *Curl*, 871 N.E.2d at 1148. Plaintiff invokes both. Neither is supported by her allegations.

As for the agency argument, plaintiff must plausibly allege that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted the agent to act as having such

authority, and that the person dealing with the agent knew of the facts and, acting in good faith, had reason to believe and did believe that the agent possessed the necessary authority. *Aluminum Line Prods. Co. v. Rolls-Royce Motors, Inc.*, 649 N.E.2d 887, 893 (Ohio Ct. App. 1994). The inquiry is whether the dealer's duty is to act primarily for the manufacturer's benefit or primarily for its own. *Curl*, 871 N.E.2d at 1148; *see Litsinger*, 536 F. Supp. 3d at 362–63 (examining the purchase agreement, the dealer's independence, its control over pricing, and the fact that it sold multiple brands in deciding that agency did not exist).

The exception is tied to the relationship between the manufacturer and the selling dealer, because that is the contract into which the consumer seeks to be inserted. Plaintiff's allegations, however, concern authorized repair facilities; she claims that International designated them and exercised control over the warranty work they performed. (Compl. ¶¶ 5, 6, 15, 74.) The complaint contains no allegation that International contracted with RCD, set the price at which RCD sold the motor home, required RCD to sell its products exclusively, or otherwise controlled RCD's operations. Allegations about repair facilities cannot substitute for allegations about the seller. Therefore, the agency exception does not apply to the present facts.

The third-party beneficiary exception fares no better. Under Ohio law only intended, not incidental, beneficiaries may enforce a contract, and a third party qualifies as intended only if the contracting parties meant to directly benefit that party when the contract was formed. *Hill v. Sonitrol of Sw. Ohio, Inc.*, 521 N.E.2d 780 (Ohio 1988); *Caruso v. Natl. City Mtge. Co.*, 931 N.E.2d 1167 (Ohio Ct. App. 2010). The mere conferring of

12

some benefit is insufficient; performance of the promise must also satisfy a duty owed by the promisee to the beneficiary. *Norfolk & W. Ry. Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir. 1980) (examining Ohio law). Relevant considerations are whether the manufacturer produced the product for a particular customer's use, whether it was mass-produced or uniquely made, whether the dealer purchased it only after a specific customer was identified, whether the manufacturer knew the identity of the ultimate consumer, and whether the product was built to that customer's specifications. *Bobb Forest Prods.*, 783 N.E.2d at 576.

One possible retort would be that International issued a limited express warranty running to consumers like plaintiff. (*See* Compl. ¶¶ 16–17.) But *Savett v. Whirlpool Corp.* rejected precisely that argument, dismissing an implied warranty claim for want of privity even though the manufacturer had provided the plaintiffs with a limited express warranty. No. 12 CV 310, 2012 WL 3780451, at *10 (N.D. Ohio Aug. 31, 2012) (applying Ohio law). The complaint does not allege that International knew plaintiff's identity, built the chassis for her, or tailored it to her requirements, so the third-party beneficiary exception to the privity requirement does not apply. Therefore, the implied warranty claim will be dismissed.

### F.  Leave to Amend

A district court should generally permit leave to amend after granting a motion to dismiss, except where an amendment would be futile or otherwise unwarranted. *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). Amendment would be futile with respect to two of the dismissed claims. First, the Ohio Lemon Law claim fails

13

because International is not a statutory "manufacturer." This defect is rooted in undisputed facts relating to International's role in the supply chain, rather than in any curable pleading omission. Second, the breach of contract claim fails because plaintiff has identified no obligation owed to her by International apart from the limited warranty, and repleading cannot manufacture a separate contract that does not exist. Therefore, those two claims are dismissed with prejudice as to defendant International.

The implied warranty claim is different. Its deficiency is the absence of factual allegations related to the relationship between International and RCD and the intent behind the supply contract between International and Forest River. The court cannot say that no set of plausible allegations consistent with plaintiff's existing pleadings could provide what is missing. Therefore, the court will grant plaintiff a single opportunity to amend that claim.

## IV.    CONCLUSION

For the foregoing reasons, International's motion to dismiss (DE # 13) is **GRANTED** as to plaintiff's Ohio Lemon Law, breach of contract, and breach of implied warranty claims, but **DENIED** as to plaintiff's breach of express warranty and Magnuson-Moss Warranty Act claims. The court **GRANTS** plaintiff leave to file an amended complaint which repleads *only* the breach of implied warranty claim **by August 28, 2026**. No further amendments will be permitted.

**SO ORDERED.**

Date: July 29, 2026

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

14